**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No.  13-cv-03090-REB-NYW

GARY BRANSON,

      Plaintiff,

v.

COMMERCE CITY POLICE OFFICER ROBERT PRICE, in his official and individual
capacity,

      Defendant.

---

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

      This matter is before me on the **Motion for Summary Judgment by Defendant
Robert Price** [#82][1] filed January 1, 2013. The plaintiff filed a response [#88], and the
defendant filed a reply [#92].  I deny the motion.

## I.  JURISDICTION

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

      The purpose of a summary judgment motion is to assess whether trial is
necessary.  **White v. York Int'l Corp.**, 45 F.3d 357, 360 (10th Cir. 1995).  FED. R. CIV.
P. 56 (a) provides that the court may grant summary judgment when "the movant shows
that there is no genuine dispute as to any material fact and the movant is entitled to
judgment as a matter of law." **FED. R. CIV. P.  56(a);** *see Anderson v. Liberty Lobby,*

---

[1] "[#82]" is an example of the convention I use to identify the docket number assigned to a specific
paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention
throughout this order.

*Inc.*, 477 U.S. 242, 250 (1986); ***Concrete Works, Inc. v. City & Cnty. of Denver***, 36 F.3d 1513, 1517 (10th Cir.1994).  Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response.  ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986).

In the current motion for summary judgment, defendant police officer Robert Price contends he is entitled to qualified immunity.  Qualified immunity shields public officials from civil damages liability if their actions did not "'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" ***Pino v. Higgs***, 75 F.3d 1461, 1467 (10th Cir. 1996) (quoting ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982)). The qualified immunity defense "cannot be analogized to other affirmative defenses because of the interests implicated in suits against government officials.  Unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial." ***Pueblo Neighborhood Health Ctrs., Inc. v. Losavio***, 847 F.2d 642, 645 (10th Cir.1988). The defense is available only to defendants sued in their individual capacity. ***See Moore v. City of Wynnewood***, 57 F.3d 924, 929 n. 4 (10th Cir.1995).

A motion for summary judgment asserting qualified immunity must be reviewed differently from other summary judgment motions. ***See Saucier v. Katz***, 533 U.S. 194, 201 (2001), ***overruled in part, Pearson v. Callahan***, 555 U.S. 223, 236 (2009); ***Holland v. Harrington***, 268 F.3d 1179, 1185 (10th Cir. 2001), ***cert. denied***, 535 U.S. 1056 (2002).  After a defendant asserts qualified immunity, the burden of persuasion shifts to the plaintiff. ***Scull v. New Mexico***, 236 F.3d 588, 595 (10th Cir. 2000).  When

faced with a motion for summary judgment asserting qualified immunity, a plaintiff bears the onus to demonstrate after a review of the evidence in the light most favorable to the plaintiff "(1) that the [defendant] official violated a statutory or constitutional right,[2] and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, ___ U.S. ___, ___, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011); *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877 (10th Cir. 2014). A court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015).

 If the plaintiff fails to satisfy either prong of the two-pronged inquiry, then the court must grant qualified immunity. *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). If the plaintiff meets this burden, the defendant can preserve his or her entitlement to qualified immunity only by showing "that there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to the defendant at the time." *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir.1996); *Felders ex rel. Smedley*, 755 F.3d at 877.

As with any motion for summary judgment, the court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff, the party opposing the motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

For a constitutional right to be clearly established, the contours of the right must

---

[2] In the context of a motion for summary judgment, the court must determine if the facts shown by the plaintiff through evidence in the record make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

be sufficiently clear that a reasonable official would understand that what he is doing violates that constitutional right. *Quinn*, 78 F.3d at 1004 - 1005. "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id*. at 1005 (citation and internal quotation omitted); *see also Ashcroft v. al-Kidd*, ___ U.S. ___, ___, 131 S.Ct. 2074, 2083 (2011). Absent binding Supreme Court or Tenth Circuit authority, the plaintiff must show a "robust consensus of cases of persuasive authority" in the Courts of Appeals. *Taylor v. Barkes*, ___ U.S. ___, ___,135 S.Ct. 2042, 2044  (2015) (quoting *City and Cnty. of San Francisco v. Sheehan*, ___ U.S. ___, ___, 135 S.Ct. 1765, 1778 (2015)). *See also al-Kidd*, ___ U.S. at  ___, 131 S.Ct. at 2084. The existence of one out-of-circuit decision and several district court decisions holding that the right at issue exists is not sufficient to put every reasonable officer on notice that the law is clearly established. *Woodward v. City of Worland*, 977 F.2d 1392, 1387 (10th Cir. 1992).[3]

The plaintiff must demonstrate also a substantial correspondence between the conduct in question and prior law establishing that the defendant's actions clearly were prohibited. *Hilliard v. City & Ctny. of Denver*,  930 F.2d 1516, 1518 (10th Cir. 1991) (citing *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990)). However, the plaintiff need not establish a "precise factual correlation between the then-existing law and the case at hand . . . ." *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir.1992)

---

[3] *See also Davis v. Holly*, 835 F.2d 1175, 1182 (6th Cir. 1987) ("A single idiosyncratic opinion from the court of appeals for another circuit was hardly sufficient to put the defendants on notice of where this circuit or the Supreme Court might come out on the issue in question."); *Higginbotham v. City of New York*, ___ F.Supp.3d ___, ___, No. 14–cv–8549 (PKC)(RLE), 2015 WL 2212242 (S.D.N.Y. May 12, 2015) (holding that three circuit courts and numerous district courts concluding that the right at issue existed were sufficient to demonstrate a "robust consensus of persuasive authority").

(internal quotations omitted).  Government officials can still be on notice that their conduct violates established law even in novel factual circumstances.  ***Hope v. Pelzer***, 536 U.S. 730, 741 (2002); ***Quinn***, 78 F.3d at 1005.  For example, the existence of unreasonable seizure is a fact-specific inquiry and, therefore, "there will almost never be a previously published opinion involving exactly the same circumstances." ***Casey v. City of Fed. Heights***, 509 F.3d 1278, 1284 (10th Cir. 2007).  "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." ***Pierce v. Gilchrist***, 359 F.3d 1279, 1298 (10th Cir. 2004).  Still, the Supreme Court has "repeatedly told courts ... not to define clearly established law at a high level of generality." ***al-Kidd***, ___ U.S. at ___, 131 S.Ct. at 2084 (citations omitted); ***see Tolan v. Cotton***, ─── U.S. ────, 134 S.Ct. 1861, 1866 (2014) ("[W]e have instructed that courts should define the clearly established right at issue on the basis of the specific context of the case." (internal quotation marks omitted)).

In short, although the court must review the evidence in the light most favorable to the plaintiff, a defendant's assertion of qualified immunity may be overcome only when the record demonstrates clearly that the plaintiff has satisfied his heavy two-part burden.  If the plaintiff satisfies this enhanced burden, then the burden shifts to the defendant.  Unless the defendant demonstrates that there is no disputed issue of material fact relevant to the immunity analysis, a motion for summary judgment based on qualified immunity must be denied. ***Salmon v. Schwarz***, 948 F.2d 1131, 1136 (10th Cir.1991).

### III.  FACTS

On November 24, 2012, 911 received a call about a dog at-large.   Plaintiff Gary

Branson was the owner of the dog.  On November 24, the dog was staying at the home of the plaintiff's cousin, Carol Robertson, in Commerce City, Colorado.  The dog, named Chloe, was a Keeshoud/Boxer/American Staffordshire Terrier mix weighing around 90-100 lbs.  An American Staffordshire Terrier is commonly referred to as a pit bull. ***See Hannah K. Pratt, Canine Profiling: Does Breed-Specific Legislation Take a Bite Out of Canine Crime***, 108 PENN ST. L. REV. 855, 863 (2004).

Arica Bores, a Community Services Officer (CSO) with Commerce City, responded to the 911 call at around 11:23 a.m. and located the dog.  CSO Bores followed the dog in her animal control vehicle to the residence of Robertson where she was joined by Commerce City Police Officers Christopher Castillo and Robert Price.  By this time the dog had retreated into Robertson's open garage.  However, at the time, the officers did not know the dog was in the temporary care of Robertson.  A second dog in a kennel was also in the garage.  Over a period of roughly twenty minutes, multiple attempts were made to contact Robertson.  No one answered the door to her house or the telephone at the number provided for the address.  The officers did not know if the owner of the dog lived in the house, and there was no indication that the owner of the dog was present or nearby.

The three officers formulated a plan to take the dog into custody because they did not know to whom the dog belonged, and they believed the dog was being aggressive toward the public.  Officers Bores and Castillo planned to use catch poles, and Officer Price intended to use his Taser to gain control of the dog.  A catch pole is a pole with a loop or snare at one end.  The loop can be placed over the head of a dog and tightened, which gives the person holding the catch pole a high degree of control over the ensnared dog.

When the other two officers were unable to snare the dog with their catch poles, Officer Price deployed his Taser twice.  During the first attempt, only one Taser probe hit the dog, and the dog went down for only a few seconds after which the dog retreated toward the back of the garage. Officer Price shot his Taser again. He missed the dog completely because trash cans blocked the dog from the probes, and the dog was too far away.

Then the dog tried to escape from the garage and started to end run the Officers. At this time, Officer Price testified that he believed the dog was charging the officers and acting extremely aggressively.  Contrastingly, according to Officer Castillo, the dog did not charge Officer Price.  According to other witnesses, the dog was not acting aggressively and did not charge the officers. From the video, it appears that the dog, who can be seen running for the open garage door and away from the officers, was attempting to escape, not attack.

While the dog was running to escape from the garage through the open garage door and away from the officers, CSO Bores, with the other two officers behind her and the dog, snared the head of the dog in a catch pole. Almost immediately, with the dog just barely outside the garage and still running away from the officers, Officer Price fired the first of five shots at the dog. In response, the dog, who was then outside the garage on the driveway, moved in an arcing counterclockwise direction away from CSO Bores and the other two officers, who were still positioned behind her and the dog.[4]

Shortly after the dog was snared in the catch pole and was outside on the driveway, Officer Price moved toward the dog, who, although facing the officers, was

---

[4] This reaction is typical of a dog caught in a catch pole, who often will helicopter or thrash and spin in panic. Here, the dog did what was expected.  The dog tried desperately to escape the catch pole and the officers.

backing away from them, and at a range of less than ten feet fired a second time. However, the dog did not go down.  With the catch pole still around the neck of the dog, Officer Price fired at the dog, as it faced him, three more times at close range and in rapid succession until the dog lay lifeless on the driveway.

A witness recorded a video of the incident.  *Response* [#88], Exhibits 3 & 14. The relevant portion of the video (the time from when the dog started to run out of the garage to when the last shot was fired) is approximately six seconds. The video does not show the dog acting aggressively toward the officers or the public while the officers devised a plan to capture the dog.  The video shows the dog barking and being territorial of the garage.   The video demonstrates that CSO Bores had the dog snared in the catch pole before Officer Price shot the dog.  The video also shows the dog attempting to get away from CSO Bores before and after the first shot was fired.

Based on these facts, the plaintiff asserts a claim under the Fourth Amendment for unconstitutional seizure based on the plaintiff's allegation that Officer Price used unreasonable force when he shot and killed the dog of the plaintiff.  In response, Officer Price contends he is entitled to qualified immunity and seeks summary judgment on the Fourth Amendment claim.

## IV.  ANALYSIS

### A. Violation of a Constitutional Right

Viewing the facts in the record in the light most favorable to the plaintiff, as I must, I conclude that the plaintiff has come forward with specific facts which, if true, demonstrate that the defendant violated the constitutional rights of the plaintiff under the Fourth Amendment[5] when the defendant killed the dog of the plaintiff on November 24, 2012.  A reasonable trier of fact could find that the defendant acted unreasonably by shooting the dog to death after the dog was ensnared in the catch pole.  Arguably, the shooting was unreasonable because the evidence in the record reasonably can be seen as showing that the dog posed no imminent threat to the officers or the public at the time of the shooting.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." **U.S. CONST. amend IV.**  Although the United States Court of Appeals for the Tenth Circuit has not expressly addressed whether dogs are effects within the meaning of the Fourth Amendment, many other circuits have addressed this issue and have determined that dogs are effects.[6]  Relevantly, Officer Price does not contend that

---

[5] As a Commerce City Police Officer, the defendant was acting under color of the law of the state of Colorado.  The strictures of the Fourth Amendment are made applicable to state actors, such as the defendant, under the Due Process Clause of the Fourteenth Amendment.  *See, e.g., Dunaway v. New York*, 442 U.S. 200, 207 (1979).

[6] *See Maldonado v. Fontanes*, 568 F.3d 263, 271 (1st Cir. 2009) ("The killing of a person's pet dog or cat by the government without the person's consent is also a seizure within the meaning of the Fourth Amendment."); *Carroll v. Cnty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) ("As a number of our sister circuits have already concluded, the unreasonable killing of a companion animal constitutes an unconstitutional 'seizure' of personal property under the Fourth Amendment."); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3d Cir. 2001) ("[T]he killing of a person's dog by a law enforcement officer constitutes a seizure under the Fourth Amendment."); *Altman v. City of High Point, N.C.*, 330 F.3d 194, 203 (4th Cir. 2003) ("[W]e hold that the plaintiffs' privately owned dogs were 'effects' subject to the protections of the Fourth Amendment."); *Altman v. City of High Point, N.C.*, 330 F.3d 194, 203 (4th Cir. 2003); *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) ("There is no question that Viilo's account of events

dogs are not effects for purposes of the Fourth Amendment. Therefore, I conclude that the dog was an effect as that term is used in the Fourth Amendment.

A seizure of an effect without a warrant is presumptively unreasonable. *United States v. Place*, 462 U.S. 696, 701 (1983). Therefore, "[i]n order for the officers' warrantless seizures of the plaintiffs' dogs to be constitutional, the seizures must have been reasonable." *Altman v. City of High Point, N.C.*, 330 F.3d 194, 205 (4th Cir. 2003) (internal quotations omitted). To determine reasonableness, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interest against the importance of the governmental interest alleged to justify the stated intrusion." *Place*, 462 U.S. at 703. The analysis is objective and does not turn on the subjective intent or motivation of the officer. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Courts consider multiple factors in analyzing whether a seizure of a dog is reasonable under the totality of the circumstances. The factors include, but are not

---

[the Officer's killing of her dog] establishes a violation of her constitutional rights. Every circuit that has considered the issue has held that the killing of a companion dog constitutes a 'seizure' within the meaning of the Fourth Amendment"); *Lesher v. Reed*, 12 F.3d 148, 150–51 (8th Cir. 1994) (removing the dog from the home was a seizure subject to the Fourth Amendment reasonableness inquiry); *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006) ("A dog is considered property for Fourth Amendment purposes."); *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994) ("A dog is an 'effect' or 'property' which can be seized. The killing of the dog is a destruction recognized as a seizure under the Fourth Amendment . . . .") (citing *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir. 1994)), *overruled on other grounds by Robinson v. Solano Cnty.*, 278 F.3d 1007 (9th Cir. 2002).

limited to the following:

(1) Whether the dog was "at-large" or whether the owner was available and willing to assert control over the dog. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210–11 (3d Cir. 2001).

(2) The breed of the dog.  *See  Altman*, 330 F.3d at 206.

(3) Whether there was time to find an alternative solution to gain control of the dog. *See Carroll v. Cnty of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013); *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975–76 (9th Cir. 2005).

(4) Whether non-lethal means were available to control the dog.  *See Carroll*, 712 F.3d at 652.

(5) Whether the dog posed a danger to the officer or the public.  *See Brown*, 269 F.3d at 210–11; *Viilo v. Eyre*, 547 F.3d 707, 712 (7th Cir. 2008).

In this case, an assessment of the evidence in light of these factors shows that there is a genuine dispute of material fact concerning the reasonableness of the actions of Officer Price.  The plaintiff has presented sufficient evidence from which a reasonable jury could conclude that, under the totality of the circumstances, the actions of Officer Price were unreasonable.

"When a dog leaves the control of his owner and runs at large in a public space, the government interest in controlling the animal . . .  waxes dramatically, while the private interest corresponding wanes." *Altman*, 330 F.3d at 205.  In this case, the dog generally was staying in the open garage but the officers present did not know if the caretaker or owner of the dog lived in the house adjacent to the garage.  Viewing the evidence in the record in the light most favorable to the plaintiff, the dog, generally, was

not behaving aggressively toward the public or the police officers and the animal control officer. Shortly before Officer Price shot the dog, the dog was captured in a catch pole by CSO Bores. Officer Bores had substantial control over the dog and the interest of the state in protecting the public and the officers present was served in that fashion. The dog had not attacked an officer nor a member of the public. Incidents involving a dog that "has not actually attacked a person" are closer cases and can demonstrate that the deadly force was unreasonable. *Altman*, 330 F.3d at 206.

Further, the plaintiff has submitted evidence to support his contention that non-lethal means were available to control or capture the dog. Most important, before the shooting, the dog largely was under control through the use of the catch pole. In addition, a reasonable jury could conclude that other non-lethal means were available, including luring the dog with treats, shutting the door to the Robertsons' garage, or attempting to get the dog into the fenced backyard. The availability of non-lethal means tends to show that Officer Price's use of lethal force was unreasonable. ***See Andrews v. City of West Branch, Iowa***, 454 F.3d 914, 918 (8th Cir. 2006).

The plaintiff disputes Officer Price's claims that the dog was acting extremely aggressively and charged the officers. Viewing the evidence in the record, including the video, in the light most favorable to plaintiff, a reasonable jury could conclude that the dog was not an imminent threat to anyone, particularly after she was restrained by the catch pole.

Law enforcement is given the benefit of the doubt in tense, rapidly evolving situations when they are forced to make split-second judgments. ***Graham***, 490 U.S. at 397. Here, the video demonstrates that the officers stood within a few feet of the dog for several minutes formulating the original plan to seize the dog. During those several

minutes, the dog did not attack and did not act aggressively. A reasonable fact finder viewing the behavior of the officers could conclude that the situation lacked exigency. Exigency is required to demonstrate a tense, rapidly evolving situation where allowance is given for the police to make split-second decisions. In addition, the situation lacked the necessary exigency to demonstrate that the officers did not have sufficient time to effect other non-lethal means to control the dog.

The breed of the dog can be a factor in determining whether a seizure is reasonable. *See Altman*, 330 F.3d at 206. *See also Warboys v. Proulx*, 303 F.Supp.2d 111, 117–18 (D. Conn. 2004). Officer Price reasonably perceived the dog to be pit bull based on the 911 caller's description of the dog and the supplemental information provided by the plaintiff. *Branson's motion for summary judgment* [#82], Exhibit 1, 1:6–7. Even though, Officer Price reasonably perceived the dog to be a dangerous breed, that fact alone does not justify a seizure in the form of shooting the dog. Rather, the other relevant factors also must be considered.

Considering the factors relevant to seizure of a dog by shooting it and viewing the evidence in the record in the light most favorable to the plaintiff, a reasonable trier of fact could find that Officer Price acted unreasonably when he shot and killed the dog. If so, the seizure is a violation of the Fourth Amendment rights of the plaintiff.

## B. Clearly Established Law

When Officer Price killed the plaintiff's dog on November 24, 2012, clearly established law held that it is unreasonable for law enforcement to kill a pet dog when the dog did not present an imminent threat to law enforcement or the public. Such a killing is an unconstitutional seizure under the Fourth Amendment. This proposition is derived from a "robust consensus of cases of persuasive authority" in the courts of

appeals. *Taylor*, 135 S.Ct. at 2044 (quoting *City and Cnty. of San Francisco v. Sheehan*, ___ U.S. ___, ___, 135 S.Ct. 1765, 1778 (2015)). *See also al-Kidd*, ___ U.S. at ___, 131 S.Ct. at 2084.

In *Viilo v. Eyre*, a Labrador/Spaniel dog leapt the fence of his owner's yard while his owner was present in the yard. 547 F.3d 707, 708 (7th Cir. 2008). The dog ran toward the police officers. *Id.* The officers shot the dog twice and the dog retreated behind some bushes. *Id.* at. 209. The police officers did not attend or give medical attention to the dog for about ten minutes. *Id.* Additionally, they did not permit the owner to retrieve her dog. *Id.* During the incident, a large crowd had gathered, and the crowd was telling the police officers that the dog was a nice dog. *Id.* The dog reemerged, and the police shot the dog again and killed it. *Id.* As in the present case, there was contradictory testimony about whether the dog was being aggressive toward the police officers. *Id.* The United States Court of Appeals of the Seventh Circuit held that it was clearly established at the time of the incident that the unnecessary killing of a person's pet offends the Fourth Amendment. *Id.* at 211. In addition, the Court held that "the use of deadly force against a pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable." *Id.* at 210.

In *Brown v. Muhlenberg Township*, a rottweiler escaped his owner's yard and went to an adjacent parking lot. 269 F.3d 205, 209 (3d Cir. 2001). A police officer, Officer Eberly, noticed the dog while he was patrolling. *Id.* The officer exited his car, approached the dog, clapped his hands, and called to the dog. *Id.* The dog barked and then withdrew. *Id.* The officer walked to a position about ten to twelve feet from the dog. *Id.* At this point, the owner of the dog saw the incident through an open window.

*Id.*  As the owner was screaming out the window, the officer shot and killed the dog.  *Id.*  A witness said the dog "did not exhibit any aggressive behavior towards" the officer.  *Id.*  The United States Court of Appeals of the Third Circuit held that "a reasonable officer in Officer's Eberly's position" would have known it was unlawful to "destroy a pet who posed no imminent danger and whose owners were known, available, and desirous of assuming custody."  *Id.* at 211.  In addition, the court held that "a reasonable officer would have understood that it was unlawful for him to destroy a citizen's personal property in the absence of a substantial public interest that would be served by the destruction."  *Id.*

In *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, police officers killed three dogs during the execution of multiple search warrants.  402 F.3d 962, 965 (9th Cir. 2005).  The officers were aware of the existence of the dogs prior to the execution of the warrants.  *Id.* at 968–69.  The United States Court of Appeals for the Ninth Circuit held that the officers' unnecessary shooting of the dogs during the execution of the warrants was unreasonable because the officers were on notice that the premises contained dogs and they had time to devise a non-lethal plan to deal with the dogs when they were executing the warrants.  *Id.* at 975–76.  "[T]he Fourth Amendment forbids the killing of a person's dog, or the destruction of a person's property, when that destruction is unnecessary – *i.e.*, when less intrusive, or less destructive, alternatives exist."  *Id.* at 977–78.  In addition, the court held that "the killing of a person's dog constitutes an unconstitutional destruction of property absent a sufficiently compelling public interest."  *Id.* at 977.

In *Andrews v. the City of West Branch, Iowa*, the officer responded to a call about a large black dog at-large. 454 F.3d 914, 916 (8th Cir. 2006).  As the Officer

drove around the neighborhood, he spotted and then lost sight of the dog several times. *Id.* He finally spotted the dog in backyard of a house, so he parked his car. *Id.* As he walked toward the yard, he fired two shots at the dog. *Id.* The Officer immediately realized he had shot the wrong dog. *Id.* At the time of the shooting, the owner was present on the porch. *Id.* The United States Court of Appeals for the Eighth Circuit held that the Officer was not entitled to qualified immunity because he had violated clearly established law when he destroyed a pet who posed no imminent danger. *Id.* at 918–19. The dog "was not on the loose, growling, acting fiercely, or harassing anyone at the time [the officer] killed him." *Id.* at 918.

Although there is no Supreme Court or Tenth Circuit precedent dealing with the exact factual scenario at issue in this case, the robust consensus of persuasive authority from other courts of appeal demonstrates that the defendant had fair notice, even in this novel factual circumstance, that using deadly force against a dog was unlawful when the dog did not present an imminent threat to law enforcement or the public. The cases summarized above and in footnote five of this order demonstrate that robust consensus. Notably, there are no cases with a contrary holding. *See Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").

The defendant argues that the plaintiff can only overcome the defendant's assertion of qualified immunity if the plaintiff cites to a Supreme Court case, a Tenth Circuit case, or a consensus of persuasive authority from other circuits that demonstrate "precisely" that a police officer acts unlawfully when he uses lethal force against a dog when the officer is confronted with the specific factual circumstances at issue here.

*Motion for summary judgment* [#82], filed January 1, 2013, pp. 16.  This is not the law.
As noted above, a plaintiff seeking to overcome a claim of qualified immunity need not
establish a "precise correlation between the then-existing law and the case at hand."
**Patrick v. Miller**, 953 F.2d 1240, 1249 (10th Cir.1992) (internal quotations omitted).
The plaintiff has demonstrated sufficiently the necessary correlation between existing
law and the present case.

### C.  Conclusion

The plaintiff has presented evidence that demonstrates a violation of his
constitutional rights and that the constitutional right in question was clearly established
at the time of the alleged violation. Thus, viewing the facts in the light most favorable to
the plaintiff, I conclude that the plaintiff has satisfied both elements necessary to
surmount the defendant's assertion of qualified immunity, and the defendant has not
countered by demonstrating "that there are no disputes of material fact as to whether
his conduct was objectively reasonable in light of clearly established law and the
information known to the defendant at the time." **Mick**, 76 F.3d at1134.  Accordingly, the
defendant is not now entitled to qualified immunity as a matter of law, and the motion for
summary judgment on that issue must be denied.

### V.  ORDER

**THEREFORE, IT IS ORDERED** that the **Motion for Summary Judgment by
Defendant Robert Price** [#82], filed January 1, 2015, is **DENIED**.

Dated September 21, 2015, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge

17